IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ROBERT A. GONZALES, | ) | |
| Petitioner, | ) | No. C 04-0084 CRB (PR) |
| | ) | |
| vs. | ) | ORDER DENYING |
| | ) | PETITION FOR A WRIT OF |
| MICHAEL MARTEL, Acting Warden, | ) | HABEAS CORPUS |
| | ) | |
| Respondent. | ) | |
| ———————————————— | ) | |

Petitioner, a state prisoner at Mule Creek State Prison in Ione, California, seeks a writ of habeas corpus under 28 U.S.C. § 2254 challenging a conviction and sentence from Santa Clara County Superior Court.   For the reasons set forth below, a writ of habeas corpus will be denied.

## STATEMENT OF THE CASE

Petitioner was convicted by a jury of assault with a deadly weapon with the personal use of a screwdriver and knife, and committing a lewd act on a child under the age of 14.  He admitted having suffered various prior serious felony convictions and prior prison terms, and, on March 21, 2001, was sentenced to 68 years to life in state prison.

Petitioner unsuccessfully appealed his conviction to the California Court of Appeal and the Supreme Court of California, which on March 5, 2003 denied review.  He also filed a petition for a writ of habeas corpus in the Supreme Court of California, which the high court denied on the same date it denied the petition for review, March 5, 2003.

On January 8, 2004, petitioner filed a petition for a writ of habeas corpus under § 2254 in this matter.  Per order filed on May 10, 2004, the court found that the petition stated cognizable claims under § 2254, when liberally construed, and ordered respondent to show cause why a writ of habeas corpus should not be granted.  After receiving several extensions of time, respondent file an answer on November 18, 2004 and petitioner filed a traverse on January 19, 2005. Petitioner also filed a motion/request for a stay to permit him to return to state court to exhaust new claims.

On April 29, 2005, the court granted petitioner's motion/request for a stay to permit him to return to state court to exhaust new claims, and instructed the clerk administratively to close the case.  The court advised petitioner that "[n]othing further will take place in this matter until petitioner exhausts the new claims, and, within 30 days thereafter, moves to reopen the case, lift the court's stay and amend the stayed petition to add the newly-exhausted claims."

On April 24, 2007, petitioner filed a "response" to the court's April 29, 2005 order, informing the court that he recently learned that the state supreme court had denied his new claims.  He also attached a proposed First Amended Petition (FAP) containing all now-exhausted claims.

On April 25, 2007, the court instructed the clerk to reopen the case and file the proposed FAP.  The court also lifted the stay and found that the claims in the FAP (i.e., the claims in the original petition and new claims of ineffective

2

assistance of counsel and prosecutorial misconduct) appear cognizable under § 2254.  It again ordered respondent to show cause why a writ of habeas corpus should not be granted.  Respondent instead filed a motion to dismiss the new claims as untimely.

On March 17, 2008, the court granted the motion to dismiss as to all but two of the new claims, which it found related back to the original petition.  It also ordered respondent to file a supplemental answer and advised petitioner that he could file a supplemental traverse.  Respondent has filed a supplemental answer and petitioner has filed a supplemental traverse.

## STATEMENT OF THE FACTS

The California Court of Appeal summarized the facts of the case as follows:

> Defendant was romantically involved with Vanessa Casteneda between 1969 and 1973.  Their son, Bobby, was born in 1972. In 1998 Bobby moved in with defendant and defendant's mother, because Vanessa had moved out of the San Jose area.
>
> On July 31, 1998, Vanessa took her two daughters, M. and V., to visit Bobby in San Jose.  M. was 11 at that time; V. was 10. When they arrived, both Bobby and defendant had already been drinking. At around 5 p.m., they resumed drinking beer, along with Vanessa and defendant's mother, Connie. At some point during the evening Bobby left for an hour or two, returning with his girlfriend. While he was gone, defendant flirted with Vanessa while they were talking in the garage with Connie. Defendant then began trying to kiss Vanessa and hold her. He tried to put his hands between her legs and asked her to go to a motel with him. Vanessa resisted defendant, telling him no and pushing him back with her feet. Defendant slapped her hard. Vanessa threatened to tell Bobby when he returned; defendant replied, "good, tell him. . . .  I can hardly wait until he gets back for you to tell him."
>
> By this time defendant, like Bobby and Connie, had been drinking throughout the day and had become increasingly intoxicated. After the rejection from Vanessa, defendant went into the house four to six times over the course of 30 to 45 minutes. Vanessa followed him most of the time, but a couple of times she was talking to Connie and did not notice him leave the garage.

/

The last time he entered the house, about 20 minutes before Bobby returned, defendant told M., who had a bladder problem, that her mother wanted her to use the restroom. He also said he wanted to tell her something inside the bathroom. M. did not believe him and said she wanted to ask her mother first. As she walked toward the kitchen, defendant pulled her, causing her to hit her head on the corner of the wall to the bathroom. He then touched her chest, held her, and tried to reach inside her T-shirt. M. held her shirt down and told him no, and after at least a minute, he released her. M. sat down and her mother entered. Vanessa asked M. if she was okay; M. said she was. She was afraid to tell her mother about the touching because she did not want defendant and Bobby to get into a fight. At that point Bobby had just returned to the house.

Vanessa met Bobby at the car. She told him that she was going to leave because defendant had hit her. Bobby told her to wait by the car, and he went into the garage. M. also went to the garage door, where she heard Bobby say, "don't be touching my mother like that again." Bobby was very close to defendant, but not touching. Defendant, pretending he had been touched, then fell backward without losing his balance. He got up and pushed Bobby, who "went flying all the way against the wall." Bobby got up, and the two men approached each other. Bobby choked defendant, who then pulled something out of his back pocket and stabbed Bobby. Vanessa and M. had both seen a screwdriver in defendant's pocket earlier in the day. Bobby then choked defendant again.

Vanessa entered the garage to see Bobby's hands around defendant's neck. She ran over to separate them; Bobby then told her defendant had stabbed him. Vanessa saw blood all over the front of Bobby's shirt, and she saw the shiny part of an object in defendant's hand. Defendant fainted and Bobby let go, but defendant recovered within seconds and "came at" Bobby as Vanessa tried to pull Bobby toward her car. The two resumed fighting. Defendant was "like a madman," throwing punches and "being real hysterical," while Bobby tried to push defendant away from him.

Vanessa and Connie managed to pull the two men apart, but Vanessa saw more blood that appeared to be coming from a new stab wound. Defendant ran into the house and back outside, running fast toward Bobby. M. saw defendant run into the house and re-emerge without anything in his hands, but she watched him look through his tools in the garage for a second, pick something up, and throw it in the grass. The two resumed fighting yet again, "viciously" punching at each other. According to M., Bobby choked defendant again, and before passing out, defendant stabbed Bobby a third time. According to Vanessa, Bobby knocked defendant to the ground. When defendant fell, Bobby kicked him about five times. Sometime between the second and third fight, Bobby punched in the window of defendant's truck. Vanessa eventually managed to get Bobby, M., and V. into her car and left.

4

As they departed, Connie threw the knife at the car.

The police found defendant lying on the ground, intoxicated and uncooperative, complaining of pain in his body and head. They retrieved a screwdriver from the bed of defendant's truck and a knife from the street in front of the driveway. DNA analysis established that Bobby's blood was on both the screwdriver and the knife.

When a police officer interviewed her after the incident, M. told him that defendant had touched her. At the police station after arrest, after obtaining defendant's waiver of his *Miranda* rights, another officer asked defendant why he had tried to touch M.'s breast, defendant answered, "Because I like her, okay." A sample of defendant's blood taken in the early hours of August 1 indicated a blood alcohol level of .23 percent and the presence of benzolechtanine, a substance produced when the body metabolizes cocaine.

Defendant was charged by information with assault with a deadly weapon, with the personal use of a screwdriver and a knife (Pen. Code, §§ 245, subd. (a)(1); 667; 1192.7) and committing a lewd act on a child under 14 (Pen. Code, § 288, subd. (a)). The jury found defendant guilty of both charged crimes. It further found true the allegation that defendant had personally used a deadly weapon during the assault on Bobby. Defendant had already admitted three prior serious felony convictions within the meaning of the "three strikes" law (Pen. Code, §§ 667, subds.(b)-(i); 1170.12), three prior serious felony convictions within the meaning of section 667, subdivision (a), and five prior prison terms. (Pen.Code, § 667.5, subd. (b).) The court accordingly sentenced defendant to two consecutive terms of 25 years to life for counts one and two, plus 15 years for the three serious felony enhancements and one year each for three of the prior prison terms.

People v. Gonzales, No. H022810, 2002 WL 31854957, at **1-3 (Cal. Ct. App. Dec. 17, 2002) (footnotes omitted).

## STANDARD OF REVIEW

This court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the

5

claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are

binding on the state courts and only those holdings need be "reasonably" applied. Id.

## CLAIMS & ANALYSIS

Petitioner raises numerous claims for relief under § 2254, including various instances of ineffective assistance of counsel, instructional error, suppression of evidence and insufficient evidence. For discussion purposes, the claims will be classified into three general categories: (A) ineffective assistance of counsel; (B) denial of due process; and (C) denial of a fair trial.

A.    Ineffective Assistance of Counsel

Petitioner raises twelve claims of ineffective assistance of counsel. He claims that counsel was ineffective for not: (1) impeaching Officer Speaks at the hearing to exclude petitioner's statement; (2) investigating Vanessa; (3) using defense photos, investigating the scene or interviewing neighbors; (4) calling Officer Navarro to contradict Vanessa and M.; (5) calling forensic experts on wounds; (6) calling intoxication expert; (7) calling witnesses on prior threats by Bobby; (8) making a motion under California Evidence Code section 782; (9) arguing lack of knowledge and willfulness for lewd act; (10) raising "requests" at motion for new trial; (11) moving to exclude petitioner's statement on the ground that he never made it; and (12) calling character witnesses.

To prevail on a claim of ineffective assistance of counsel, petitioner must pass the two-part test set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984). Petitioner must demonstrate that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "counsel's deficient performance prejudiced the defense." Id. at 687-88. Concerning the first element, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Hence, "judicial

scrutiny of counsel's performance must be highly deferential." Id.  To fulfill the second element, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.  A reasonable probability is a probability sufficient to undermine the confidence in the outcome.  Id.

   1.   Not impeaching Officer Speaks at suppression hearing

The trial court held a hearing on petitioner's motion to exclude his statement to the police about touching M., but denied the motion after concluding that the statement had been made voluntarily.  Petitioner claims that counsel was ineffective at the hearing because he did not impeach the testifying officer "about his inconsistent testimony" and did not call two other officers as to petitioner "being very intoxicated and very uncooperative." FAP at 7.

The record shows that Officer Speaks testified at the hearing that when he arrived at the crime scene he found petitioner "laying on his back intoxicated." Rep. Tr. at 16.  Petitioner's attitude was "vague and uncooperative," but he "was able to walk and respond to questions." Id. at 16-17.  Speaks learned that petitioner had been kicked in the head and called for medical attention.  Petitioner was treated.  Shortly thereafter, Speaks arrested petitioner and took him to the police department for booking.  Although petitioner smelled of alcohol, he was able to "stand on his own" and "walk by himself." Id. at 20.  Petitioner was cooperative during booking and answered questions "about his address, work, so on and so forth." Id. at 21.  Speaks advised petitioner of his Miranda rights and after each advisement asked if petitioner understood.  Petitioner responded "yes" each time. Id. at 13-14.  When asked if he was willing to give a statement, petitioner responded, "Yeah, sure." Id. at 14.  Speaks then asked petitioner "why he had touched the 13-year-old's breasts," and petitioner responded "because I

liked her, okay." Id.  Speaks began to ask more questions, but at that point petitioner asked if he could use the bathroom.  Speaks told petitioner they had to wait for "a detective from sexual assaults to arrive." Id. at 20.  Petitioner urinated on himself shortly thereafter.

Petitioner testified that he asked to use the restroom when he first arrived at the police station.  He kept asking, but no one allowed him to go so he urinated "in the corner of the holding tank" before questioning began.  Id. at 23.  A while later, he again asked to use the restroom.  Petitioner did not remember being read his Miranda rights or answering any questions.  He felt "dizzy" and heard "buzzing" and "ringing" from Bobby's kicks to his head, but "[m]ore than that" he felt "the effects of alcohol." Id. at 24.  As he was questioned he "kept going in and out, blacking out and coming to, blacking out and coming to." Id. at 25.

The California Court of Appeal found that the record "supports the trial court's conclusion that defendant knowingly waived his rights and voluntarily made the statement about his conduct with M." People v. Gonzales, 2002 WL 31854957, at *5.  The court explained:

> Neither defendant's need to use the bathroom nor his intoxicated state automatically vitiated his *Miranda* waiver or made his incriminating statement involuntary.  Absent coercive police conduct that takes advantage of defendant's vulnerable state, a defendant's mental condition does not control the determination of voluntariness.  (*Colorado v. Connelly* (1986) 479 U.S. 157, 164 . . . .)  Here the evidence showed that defendant had expressly agreed to talk to Officer Speaks before he made his incriminating statement.  Only after making the statement did he ask to use the restroom.  Officer Speaks testified that defendant was intoxicated, but he was able to stand and walk on his own, and he was able to respond to the officer's questions.  No factual basis for reversal is presented on this ground.

Id.

Petitioner's claim that counsel was ineffective because he did not impeach Officer Speaks about his inconsistent testimony or call Officers Navarro and

Moreno as to his being very intoxicated and uncooperative is without merit.  The state courts' summary rejection of the claim on collateral review cannot be said to have been an objectively unreasonable application of the <u>Strickland</u> standard.  <u>See</u> <u>Plascencia v. Alameda</u>, 467 F.3d 1190, 1197-98 (9th Cir. 2006) (applying 28 U.S.C. § 2254(d)).

Petitioner does not identify any significant inconsistencies in Officer Speaks' testimony, or show that the other officers would have testified that at the time of booking petitioner was uncooperative or that his intoxication level was different than that described by Speaks.  Petitioner's mere speculation that other witnesses might have given helpful testimony if called is not enough to establish ineffective assistance.  <u>See</u> <u>Bragg v. Galaza</u>, 242 F.3d 1082, 1087 (9th Cir.), <u>amended</u>, 253 F.3d 1150 (9th Cir. 2001).  In order to establish prejudice caused by the failure to call Officers Navarro and Moreno, petitioner must show that the officers were likely to have been available to testify; that the officers would have given helpful testimony; that had they testified, it is reasonable that the trial court would have granted the motion to exclude petitioner's statement as meritorious; and that had petitioner's statement been excluded, it is reasonable that there would have been an outcome more favorable to him.  <u>See</u> <u>Alcala v. Woodford</u>, 334 F.3d 862, 872-73 (9th Cir. 2003).  Petitioner makes no such showing.  He is not entitled to federal habeas relief on his claim that counsel was constitutionally ineffective in connection with the motion to exclude petitioner's statement that he had touched M.  After all, M. herself testified at trial that petitioner had touched her chest and tried to get under her shirt.  <u>See</u> Rep. Tr. at 236-37.

2.      <u>Not investigating Vanessa</u>

Petitioner claims that counsel was ineffective because he did not "investigate[] crucial evidence of witness Vanessa Castaneda as to impeachment

10

evidence.  Witness Castaneda was on probation and just got released from a drug

rehab. center a week before the alleged crime, this evidence could have been used

at trial under impeachment purposes."  FAP at 7.

Petitioner's claim is without merit because the state courts' summary

rejection of the claim on collateral review cannot be said to have been an

objectively unreasonable application of the Strickland standard.  See 28 U.S.C. §

2254(d).  Petitioner sets forth no evidence showing that Vanessa was on

probation and/or recently released from a drug-rehabilitation center.  Nor does he

show that any such evidence would materially impeach Vanessa and create a

reasonable probability of a different outcome.  See Strickland, 466 U.S. at 694.

The record in fact shows that counsel extensively impeached Vanessa with how

much she had drank and her lack of recollection of certain events, and that much

of Vanessa's testimony was corroborated by M.  Among other things, M. testified

that she saw petitioner pretend that Bobby had touched him, cause Bobby to go

"flying all the way against the wall," get chocked by Bobby, stab Bobby with an

implement from his back pocket and fight again with Bobby and stab him.  See

Rep. Tr. at 242, 247-48, 253.

3.   Not using defense photos, investigating scene, etc.

Petitioner claims that counsel was ineffective because he did not

"introduce[] 'defense photos' of the crime scene and/or investigate[] the crime

scene" and did not "interview[] neighbors who witnessed the alleged crime."

FAP at 7.   But he adds little more detail or evidence in support of his claim.

Petitioner's claim must be rejected as conclusory and speculative.  See

Jones v. Gomez, 66 F.3d 199, 205 (9th Cir. 1995) (conclusory allegations of ineffective

assistance of counsel do not warrant federal habeas relief).  He has not shown how

any of the alleged deficiencies prejudiced him under Strickland.  See Strickland,

11

466 U.S. at 694.  The state courts' summary rejection of the claim on collateral review accordingly cannot be said to have been an objectively unreasonable application of the Strickland standard.  See 28 U.S.C. § 2254(d).[1]

### 4. Not calling Officer Navarro to contradict Vanessa and M.

Petitioner claims that counsel was ineffective for not calling "Officer Navarro who would have contradicted [M.'s] and Vanessa['s] testimony who both committed perjury."  FAP at 7.  But again petitioner offers little detail or evidence in support of his claim.

Petitioner's claim is without merit because the state courts' summary rejection of the claim on collateral review cannot be said to have been an objectively unreasonable application of the Strickland standard.  See 28 U.S.C. § 2254(d).  Petitioner has not shown that Navarro was likely to have been available to testify, that Navarro would have given the proffered testimony, and that Navarro's testimony would have created a reasonable probability that the jury would have reached a verdict more favorable to petitioner.  See Alcala, 334 F.3d at 872-73.  The record shows that counsel extensively impeached Vanessa and M., and argued that they were not credible.  See, e.g., Rep Tr. at 502 (stating that M. "was a sweet girl," but that her testimony was such that "you'll find you don't know which version to believe," noting inconsistencies in statements, and arguing that "if her testimony is so wildly disparate in terms of what happened, I

---

[1]Petitioner's last-minute claim that counsel was ineffective for not calling neighbor George Ochoa, who would have testified that Bobby was not stabbed outside with a knife, does not compel a different result.  The California Court of Appeal reviewed Ochoa's testimony in connection with the motion for a new trial and determined that there was "no reasonable probability of a different outcome" had Ochoa testified at trial.  People v. Gonzales, 2002 WL 31854957, at *7.  The state court's rejection of the claim was not objectively unreasonable.  See 28 U.S.C. § 2254(d).

don't think you can believe it").

5.   Not calling forensic expert on wounds

Petitioner claims that counsel was ineffective for not calling a forensic expert "to establish the type of wounds that were allegedly done with a screwdriver and/or a knife." FAP at 7.  But petitioner does not identify what a forensic expert would have testified to or how such testimony would have made a more favorable result reasonably probable.  Petitioner's mere "[s]peculation about what an expert may have said is not enough to establish prejudice." Grigsby v. Blodgett, 130 F.3d 365, 373 (9th Cir. 1997).

The California Court of Appeal's rejection of a similar claim supports this court's conclusion.  In rejecting petitioner's claim that counsel was ineffective for failing to present evidence from Bobby's medical records that the stab wounds were all about the same length, thus indicating that they were all made by the same instrument, the court of appeal reasoned:

> As for the medical evidence regarding the stab wounds, it did not contribute sufficiently to defendant's case to warrant a finding of prejudice.  The parties stipulated that the emergency room physician would have testified that the three stab wounds on Bobby were located in the same area of his abdomen, and all were "eye-balled" as being one to two centimeters in length.  In addition, the medical records contained the statement that Bobby "had been stabbed with a screw driver three times in the right upper quadrant of the abdomen and right lower chest."  Another entry indicated one wound in the lower right chest and two in the lower right abdominal area.
>
> This evidence was already before the jury.  Bobby showed the jurors the scars from his injuries.  The physician's entry indicating that all the wounds were caused by the screwdriver was inconsistent with the position of the defense, that defendant stabbed Bobby with a knife in self-defense.  Defense counsel disputed the suggestion that the weapon was a screwdriver with a bent blade.  We will not second-guess defense counsel's strategy by suggesting he should have argued that all injuries occurred in the course of a single incident involving a stabbing with a screwdriver.

People v. Gonzales, 2002 WL 31854957, at *7.

13

Petitioner's claim that counsel was ineffective for not calling a forensic expert on wounds is without merit.  Petitioner has not shown that a forensic expert's testimony would have created a reasonable probability that the jury would have reached a verdict more favorable to petitioner.  See Strickland, 466 U.S. at 694; Alcala, 334 F.3d at 872-73.  The state courts' summary rejection of the claim on collateral review cannot be said to have been an objectively unreasonable application of the Strickland standard.  See 28 U.S.C. § 2254(d).

> 6.     Not calling intoxication expert

Petitioner claims that counsel was ineffective for not calling an intoxication expert "concerning the mixture of alcohol on a Diabetic person, and the potential defense of the specific intent issue."  FAP at 7.  Or, as he more precisely put it to state courts, counsel should have called an expert to testify that because of diabetes petitioner "was suffering from the 'intensified effects of intoxication' and therefore was unable to form the specific intent required for this offense."  People v. Gonzales, 2002 WL 31854957, at *5.

The California Court of Appeal rejected petitioner's claim on direct review.  The court explained that defense counsel's intoxication expert's

> testimony regarding the effects of alcohol intoxication was directed at the question of whether a person intoxicated to [the] degree [petitioner was intoxicated] would be capable of understanding and waiving his *Miranda* rights.  [At the hearing on petitioner's motion for a new trial, the expert] specifically said she had "no way of knowing" whether an intoxicated person would be capable of exercising intent to engage in a sexual act.  The "only thing" she could affirmatively say was that the person "m[ight] not understand the consequences and they might be [sic] exhibiting the same inhibitions and judgment that they would have."  Such testimony would not have aided defendant at trial.  Indeed, as the People point out, it may have harmed the defense, by conveying the possibility that defendant had molested M. in an act facilitated by a reduction in self-control.  Defense counsel was not constitutionally ineffective in failing to elicit such testimony.

Id. at *8.

14

The state courts' rejection of the claim cannot be said to have been an objectively unreasonable application of the <u>Strickland</u> standard.  <u>See</u> 28 U.S.C. § 2254(d).  Petitioner is not entitled to federal habeas relief based on mere speculation that the expert may have testified differently and thereby created a reasonable probability that the jury would have reached a verdict more favorable to petitioner.  <u>See</u> <u>Strickland</u>, 466 U.S. at 694; <u>Alcala</u>, 334 F.3d at 872-73.

### 7.   Not calling witnesses on prior threats by victim

Petitioner claims that counsel was ineffective for not calling "witnesses concerning the prior threats made by [Bobby.]"  FAP at 7.

Petitioner's claim is without merit because the state courts' summary rejection of the claim on collateral review cannot be said to have been an objectively unreasonable application of the <u>Strickland</u> standard.  <u>See</u> 28 U.S.C. § 2254(d).  Petitioner has not shown who would have been available to testify on antecedent threats by Bobby, that the witness or witnesses would have given the proffered testimony, and that the testimony would have created a reasonable probability that the jury would have reached a verdict more favorable to petitioner.  <u>See</u> <u>Alcala</u>, 334 F.3d at 872-73.

Evidence of prior threats would not have aided petitioner in any event. Evidence of prior threats may be relevant in cases where the jury must consider all of the relevant circumstances to determine whether a reasonable person in the defendant's position would have believed in the need to defend himself.  <u>See</u> <u>People v. Humphrey</u>, 13 Cal. 4th 1073, 1083 (1996).  But here, where Bobby's initial attack concededly justified petitioner in defending himself, evidence of prior threats would have been insignificant or possibly irrelevant.

### 8.   Not making motion under Evidence Code section 782

Petitioner claims that counsel was ineffective for not making "any

15

type of motion before trial concerning the issue of Evidence Code 782." FAP at 7. The claim is without merit.

Section 782 specifies a procedure which must be followed before a defendant being prosecuted for a sexual offense is allowed to attack the credibility of the alleged victim by presenting evidence of that witness' sexual conduct. The procedure is initiated by the filing of a written motion supported by an affidavit in which the offer of proof is stated. People v. Franklin, 25 Cal. App. 4th 328, 334 (1994). Such motions have been granted in few cases, most often in cases where the victim's prior sexual history is one of prostitution. People v. Chandler, 56 Cal. App. 4th 703, 708 (1997).

Petitioner's claim is without merit because the state courts' summary rejection of the claim on collateral review cannot be said to have been an objectively unreasonable application of the Strickland standard. See 28 U.S.C. § 2254(d). Petitioner has not shown that (1) had his counsel made the motion, it is reasonable that the trial court would have granted it as meritorious; and (2) had the motion been granted, it is reasonable that there would have been an outcome more favorable to him. Wilson v. Henry, 185 F.3d 986, 990 (9th Cir. 1999).

9. Not arguing lack of knowledge and willfulness for lewd act

Petitioner claims that counsel was ineffective because he "[n]ever argued the fact of knowingly and willingly commit any type of crime pertaining to" the lewd act count. FAP at 7. Put simply, petitioner claims that counsel should have argued that petitioner's level of intoxication precluded him from forming the specific intent of "arousing, appealing to, or gratifying the lust, passions, or sexual desires of" himself or M. Cal. Penal Code § 288(a).

In rejecting petitioner's claim that counsel was ineffective for not calling an intoxication expert to testify that petitioner's diabetes and intoxication

16

precluded him from forming the requisite specific intent to violate section 288(a), the California Court of Appeal reasonably found that counsel reasonably chose not to emphasize intoxication evidence that would have highlighted the potential loss of control associated with alcohol consumption.  See People v. Gonzales, 2002 WL 31854957, at *8.  Such an argument may have worked against petitioner by conveying the possibility that petitioner molested M. because of the alcohol he consumed voluntarily diminished his self-control.  See id.  As a tactical matter, counsel reasonably chose to argue that petitioner was not guilty of molesting M. because M. was not credible, rather than because petitioner was intoxicated.  The same logic applies to the instant claim.

Petitioner is not entitled to federal habeas relief on his claim that counsel was ineffective for not arguing lack of knowledge and willfulness due to petitioner's intoxication.  The state courts' summary rejection of the claim on collateral review cannot be said to have been an objectively unreasonable application of the Strickland standard.  See 28 U.S.C. § 2254(d).

10.   Not raising "requests" at motion for new trial

Petitioner claims that counsel was ineffective for not raising various "requests" at the hearing on the motion for a new trial.  FAP at 7.  But he adds little else in support of the claim, which consequently must be rejected as conclusory and speculative.  See Jones, 66 F.3d at 205.

11.   Not moving to exclude petitioner's statement

Petitioner claims that counsel was ineffective for not moving to exclude petitioner's statement to the police "on the grounds that the statement or admission was not made."  FAP Mem. at 14.  The claim is without merit.

Petitioner alleges that "on several occasions [he] told his attorney Mr. Koller that he never made the statement or admission to the officer."  Id.  The

17

allegation is not compatible with petitioner's sworn testimony or prior conduct. At the hearing on the motion to exclude his statement, petitioner testified that he did not remember whether he was read his <u>Miranda</u> rights or whether he answered any questions because he did not remember the time when the officer spoke with him and asked him questions. <u>See</u> Rep. Tr. at 24-25. Petitioner could not have no recollection of the time the officer spoke with him and answered questions and yet have sufficient recollection to tell his attorney that he never made the statement or admission. <u>Cf.</u> <u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74 (1977) (solemn declarations in open court carry strong presumption of verity; subsequent presentation of allegations unsupported by specifics is subject to dismissal, as are contentions that in face of record are wholly incredible). It is also telling that notwithstanding his current version of events, petitioner did not allege in his original state or federal petitions that he told his attorney that he never made the challenged statement. It was only after respondent answered and noted that counsel had not challenged petitioner's statement as never having been made that petitioner advanced his current version of events. <u>Cf.</u> <u>Perez v. Rosario</u>, 459 F.3d 943, 951 (9th Cir. 2006) (rejecting as not credible claim that counsel kept petitioner from stand, which was advanced only after state noted that petitioner had made no such claim in his original petition).

Even if petitioner told counsel that he never made the statement to the officer, counsel acted reasonably in seeking to exclude the statement on the ground that it was obtained in violation of due process and <u>Miranda</u> rather than on the ground that it was never made. Although the trial court must exclude evidence of a statement that is coerced or taken in violation of <u>Miranda</u>, it would not exclude evidence of a statement when there is conflicting credible evidence that the statement was in fact made. <u>See</u> Cal. Evid. Code § 403(a)(4).

1       As a matter of trial tactics, it was reasonable for counsel to challenge the

2   statement as involuntary and obtained in violation of Miranda rather than as a

3   police fabrication.  A motion to exclude the statement as a police fabrication

4   would have guaranteed the jury would hear the statement because the officer's

5   testimony that the statement was made was sufficient to put the matter to the jury.

6   See id.  To convince the jury that petitioner did not make the statement, petitioner

7   would have had to testify and face cross-examination.  By challenging the

8   statement as involuntary and obtained in violation of Miranda, counsel took the

9   approach that could lead to the exclusion of the statement and keep petitioner

10   from having to testify.  Counsel's choice was well within the bounds of

11   professional competence.  See Strickland, 466 U.S. at 688-89.

12       And even if counsel's performance could be said to have been deficient,

13   petitioner has not shown prejudice.  It cannot be said that there is a reasonable

14   probability that, but for counsel's failure to move to exclude petitioner's

15   statement, the result of the proceeding would have been different.  Id. at 694;

16   Wilson, 185 F.3d at 990.  After all, M. told police and testified at trial that

17   petitioner had touched her chest and tried to get under her shirt.  See Rep. Tr. at

18   236-37.  And other evidence showed that petitioner had molested another girl

19   under very similar circumstances.

20       Petitioner is not entitled to federal habeas relief on his claim that counsel

21   was ineffective for not moving to exclude his statement on the ground that he

22   never made it.  The state courts' summary rejection of the claim on collateral

23   review cannot be said to have been an objectively unreasonable application of the

24   Strickland standard.  See 28 U.S.C. § 2254(d).[2]

25   _____

26       [2]Petitioner's related claim that counsel was ineffective for failing to
27   investigate the fact that video and audio recorders were in various parts of the

1

12.      Not calling character witnesses

2          Petitioner claims that counsel was ineffective for not discovering

3   and calling "character witnesses available to testify to petitioner's good nature

4   like Angie Killingsorth and George Ochoa."  FAP Mem. at 20.  The claim is

5   without merit.

6          California Evidence Code section 1102 authorizes admission of "evidence

7   of the defendant's character or a trait of his character in the form of an opinion or

8   evidence of his reputation" when offered by the defendant "to prove his conduct

9   in conformity with such character or trait of character."  Petitioner's conclusory

10  claim that Killingsorth and Ochoa were available to testify to his "good nature"

11  does not show that they possessed admissible evidence under section 1102.

12  Regardless, it was not unreasonable for counsel not to seek to introduce character

13  evidence because the admission of such evidence would have opened the door to

14  questions regarding petitioner's criminal history, which included twelve prior

15  felony convictions, five prison commitments, fourteen parole violations and

16  thirty-five misdemeanor convictions.  See Strickland, 466 U.S. at 688-89.

17         Petitioner is not entitled to federal habeas relief on his claim that counsel

18  was ineffective for not calling character witnesses.  The state courts' summary

19  rejection of the claim on collateral review cannot be said to have been an

20  objectively unreasonable application of Strickland.  See 28 U.S.C. § 2254(d).

21  B.      Denial of Due Process

22         Petitioner claims that he was denied due process in a variety of ways,

23  some of which merely replicate his claims of ineffective assistance of counsel

24  _____

25  station does not compel a different conclusion.  There is no evidence that any
    such devices existed, recorded petitioner and/or could somehow prove that he did
26  not make a statement to the officer.  The claim is purely speculative.  See Jones,
    66 F.3d at 205.
27

28                                        20

and do not present a separate basis for relief.  See Dowling v. United States, 493
U.S. 342, 352 (1990) ("Beyond the specific guarantees in the Bill of Rights, the
Due Process Clause has limited operation.").  But his other due process claims
must be addressed.

1.    Failure to instruct on self-defense

Petitioner asserted at trial that if there was a stabbing with the
screwdriver, it was self-defense, with Bobby as the aggressor; and that the latter
stabbing with the knife was also in self-defense because Bobby was still the
aggressor.  The trial court instructed on the general principles of assault and self-
defense, giving thorough instructions on petitioner's right to use reasonable force
to defend himself from attack if he actually and reasonably believed that bodily
injury was about to be inflicted upon him.  Petitioner nonetheless claims that he
was denied process because there was "a total failure to give jury instructions on
every essential element of self-defense such as prior threats and defense of
property of Petitioner's vehicle."  FAP at 8.  The claim is without merit.

The Supreme Court has made clear that the due process requirement of In
re Winship, 397 U.S. 358 (1970), that the state prove beyond a reasonable doubt
with respect to every element of the offense charged, "does not apply" to a
situation in which a jury instruction "created a risk that the jury would fail to
consider evidence that related to an affirmative defense."  Gilmore v. Taylor, 508
U.S. 333, 343 (1993).  Petitioner's claim fails for want of clearly established
Supreme Court precedent to support it.  See 28 U.S.C. § 2254(d).

The claim further fails because the state courts' summary rejection of it on
collateral review cannot be said to have been objectively unreasonable.  See
Plascencia v. Alameda, 467 F.3d 1190, 1197-98 (9th Cir. 2006) (applying 28
U.S.C. § 2254(d)).  In order to prevail on a claim of instructional error, petitioner

must show that the error had a substantial and injurious effect or influence in determining the jury's verdict.  See Calderon v. Coleman, 525 U.S. 141, 146-47 (1998) (citing Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).  There is no such showing here; there is not even an indication that an error in not instructing the jury on prior threats or defense of property had a substantial and injurious effect or influence on the verdict.  There simply was no evidence of prior threats or of petitioner defending his property for the jury to apply instructions on prior threats or defense of property.  The only evidence about damage to property was that sometime between the second and third fight, Bobby punched in petitioner's truck window.

### 2.  Discovery of records under Evidence Code section 782

Petitioner claims that he was "denied discovery of confidential records under California Evidence Code section 782 which were material and pertinent to the defense." FAP at 8.  He does not identify any specific records or show how they were material, however.  Nor doe he show how such records could have been obtained under section 782.  As noted in connection with petitioner's claim that counsel was ineffective for not making a motion under section 782, section 782 provides a method for a defendant to bring certain evidence to the court, not a method for obtaining the evidence.

Petitioner is not entitled to federal habeas relief on his claim that he was denied discovery under section 782.  The state courts' summary rejection of the claim cannot be said to have been objectively unreasonable.  See Plascencia, 467 F.3d at 1197-98 (applying 28 U.S.C. § 2254(d)).

### 3.  Failure to disclose impeachment evidence

Petitioner claims he was denied due process because the prosecution "failed to fully disclose any and all information about a witness who

1  was on probation at the time of the trial for impeachment purposes."  FAP at 8.

2  He later identifies the witness as Vanessa Castaneda.  See FAP Mem. at 10.

3  In Brady v. Maryland, 373 U.S. 83, 87 (1963), the Supreme Court held

4  that "the suppression by the prosecution of evidence favorable to an accused

5  upon request violates due process where the evidence is material either to guilt or

6  to punishment, irrespective of the good faith or bad faith of the prosecution."

7  The Court has since made clear that the duty to disclose such evidence applies

8  even when there has been no request by the accused, United States v. Agurs, 427

9  U.S. 97, 107 (1976), and that the duty encompasses impeachment evidence as

10  well as exculpatory evidence, United States v. Bagley, 473 U.S. 667, 676 (1985).

11  "There are three components of a true Brady violation: [t]he evidence at

12  issue must be favorable to the accused, either because it is exculpatory, or

13  because it is impeaching; that evidence must have been suppressed by the State,

14  either willfully or inadvertently; and prejudice must have ensued."  Strickler v.

15  Greene, 527 U.S. 263, 281-82 (1999).  "[T]here is never a real 'Brady violation'

16  unless the nondisclosure was so serious that there is a reasonable probability that

17  the suppressed evidence would have produced a different verdict."  Id. at 281.

18  Petitioner's earlier claim that counsel was ineffective for not investigating

19  Vanessa's being on probation suggests that petitioner was aware of Vanessa's

20  probation status.  This would preclude his prevailing on a Brady claim because its

21  is well-established that a defendant cannot claim a Brady violation if he was

22  "aware of the essential facts enabling him to take advantage of any exculpatory

23  evidence."  United States v. Shaffer, 789 F.2d 682, 690 (9th Cir. 1986).[3]

24

25

26  [3]Accord Spears v. Mullin, 343 F.3d 1215, 1256 (10th Cir. 2003);
Ellsworth v. Warden, 333 F.3d 1, 6 (1st Cir. 2003); United States v. Walrath, 324

27  F.3d 966, 969 (8th Cir. 2003).

28

Regardless, petitioner's <u>Brady</u> claim fails because he has not demonstrated that there is a reasonable probability that the outcome of the trial would have been different had the evidence (Vanessa's probation status) been disclosed.  <u>See</u> <u>Strickler</u>, 527 U.S. at 281-82; <u>Gantt v. Roe</u>, 389 F.3d 908, 913 (9th Cir. 2004). As noted earlier, Vanessa was impeached extensively; Vanessa's testimony was corroborated by M., whom the jury believed; and Vanessa's testimony was largely irrelevant to the lewd act charge.  <u>See</u> <u>supra</u> at 11.

Petitioner is not entitled to federal habeas relief on his <u>Brady</u> claim.  The state courts' summary rejection of the claim cannot be said to have been objectively unreasonable.  <u>See</u> <u>Plascencia</u>, 467 F.3d at 1197-98 (applying 28 U.S.C. § 2254(d)).

       4.    <u>Cumulative errors of counsel</u>

Petitioner claims that his conviction "was a result of cumulative errors of counsel, i.e. errors that although not prejudicial individually, are cumulatively prejudicial."  FAP at 8.  The claim is without merit.

Although "prejudice may result from the cumulative impact of multiple deficiencies," <u>Harris v. Wood</u>, 64 F.3d 1432, 1438 (9th Cir. 1995) (citation and internal quotation marks omitted), petitioner has not demonstrated any constitutional shortcomings by counsel that could accumulate to prejudice.  <u>Cf.</u> <u>Mancuso v. Olivarez</u>, 292 F.3d 939, 957 (9th Cir. 2002) (where there is no single constitutional error, nothing can accumulate to level of constitutional violation). Nor has he demonstrated that this is not one of the exceedingly rare cases in which the cumulative effect of the alleged trial errors so infected the trial with unfairness as to make the resulting conviction a denial of due process.  <u>Cf.</u> <u>Alcala v. Woodford</u>, 334 F.3d 862, 893-95 (9th Cir. 2003) (reversing a conviction where multiple constitutional errors hindered defendant's efforts to challenge every

1    important element of proof offered by prosecution); <u>Thomas v. Hubbard</u>, 273

2    F.3d 1164, 1179-81 (9th Cir. 2002) (reversing conviction based on cumulative

3    prejudicial effect of (a) admission of triple hearsay statement providing only

4    evidence that defendant had motive and access to murder weapon; (b)

5    prosecutorial misconduct in disclosing to the jury that the defendant had

6    committed prior crime with use of firearm; and (c) truncation of defense cross-

7    examination of police officer, which prevented defense from adducing evidence

8    that someone else may have committed the crime and evidence casting doubt on

9    credibility of main prosecution witness).

10         Petitioner is not entitled to federal habeas relief on his claim of cumulative

11    error/prejudice.  The state courts' summary rejection of the claim cannot be said

12    to have been objectively unreasonable.  <u>See</u> <u>Plascencia</u>, 467 F.3d at 1197-98

13    (applying 28 U.S.C. § 2254(d)).

14         5.   <u>Not measuring error under <em>Chapman</em></u>

15         Petitioner claims his conviction was upheld "because of

16    [c]onstitutional error, the prejudice effect of which was not measured by the

17    reasonable doubt standard" articulated in <u>Chapman v. California</u>, 386 U.S. 18

18    (1967).  FAP at 8.  The claim is without merit.

19         Federal courts formerly applied the <u>Chapman</u> harmless error standard to

20    all criminal convictions tainted by trial error.  Under this test "before a federal

21    constitutional error can be harmless, the court must be able to declare a belief that

22    it was harmless beyond a reasonable doubt."  <u>Chapman</u>, 386 U.S. at 24.  While

23    the <u>Chapman</u> standard remains applicable to criminal convictions challenged on

24    direct appeal, the Supreme Court has adopted a less strict standard for federal

25    habeas corpus.  <u>See</u> <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637-38 (1993).  A

26    habeas petitioner is not entitled to relief unless the trial error "'had substantial and

27

28                           25

injurious effect or influence in determining the jury's verdict.'" Id. at 637

(quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).  In other words,

state prisoners seeking federal habeas relief may obtain plenary review of

constitutional claims of trial error, but are not entitled to habeas relief unless the

error resulted in "actual prejudice."  Id. (citation omitted).

The California Court of Appeal properly did not apply Chapman to

petitioner's claims of ineffective assistance of counsel because those claims were

governed by the prejudice standard announced in Strickland.  See Avila v.

Galaza, 297 F.3d 911, 918 n.7 (9th Cir. 2002) (Strickland prejudice analysis is

complete in itself; there is no need for additional harmless error review).  And it

properly did not apply Chapman to the other claims because it found no error.

But even if the state court had somehow erred by not applying Chapman to these

other claims, that would not be a sufficient basis for obtaining federal habeas

relief.  In order to obtain federal habeas relief, petitioner would have to establish

that a constitutional error had a substantial and injurious effect or influence on

the verdict.  See Fry v. Pliler, 127 S. Ct. 2321, 2328 (2007) (Brecht standard

applies uniformly in all federal habeas corpus cases challenging criminal

convictions under § 2254, whether or not state appellate court recognized error

and reviewed it for harmlessness under Chapman standard); Bains v. Cambra,

204 F.3d 964, 977 (9th Cir. 2000) (same).  He does not.

Petitioner is not entitled to federal habeas relief on his claim that error was

not properly measured under Chapman.  The state courts' summary rejection of

the claim cannot be said to have been objectively unreasonable.  See Plascencia,

467 F.3d at 1197-98 (applying 28 U.S.C. § 2254(d)).

      6.    Actual innocence

Petitioner claims that he is "actually innocent of the crimes of

1   which he was convicted, resulting in a miscarriage of justice, which is correctable

2   on habeas corpus." FAP Mem. at 11. The claim is without merit.

3       "Claims of actual innocence . . . have never been held to state a ground for

4   federal habeas relief absent an independent constitutional violation occurring in

5   the underlying state criminal proceeding." Herrera v. Collins, 506 U.S. 390, 400

6   (1993). Petitioner is not entitled to federal habeas relief based solely on his claim

7   of actual innocence of the crimes. See Coley v. Gonzalez, 55 F.3d 1385, 1387

8   (9th Cir. 1995); Swan v. Peterson, 6 F.3d 1373, 1384 (9th Cir. 1993).[4]

9       7.    Admission of other crimes evidence

10      Petitioner claims that admitting evidence of "'other crimes' in order

11  to draw the additional influence of criminal propensity" violated his right to due

12  process. FAP at 8. The claim is without merit.

13      The Supreme Court has left open the question of whether admission of

14  propensity evidence violates due process. Estelle v. McGuire, 502 U.S. 62, 75 n.

15  5 (1991). Because the Court has left this issue an "open question," a petitioner's

16  due process right concerning the admission of propensity evidence is not clearly

17  established as required by 28 U.S.C. § 2254(d). Mejia v. Garcia, 534 F.3d 1036,

18  1046 (9th Cir. 2008); Alberni v. McDaniel, 458 F.3d 860, 866-67 (9th Cir. 2006).

19

20  _____

21      [4]The Ninth Circuit has held that a capital habeas petitioner may assert a
    freestanding actual innocence claim because a majority of the justices in Herrera

22  would have supported such a claim. See Carriger v. Stewart, 132 F.3d 463, 476
    (9th Cir. 1997) (en banc). The petitioner's burden in such a case is

23  "extraordinarily high," and requires a showing that is "truly persuasive." Id.
    (quoting Herrera, 506 U.S. at 417). To be entitled to relief, the capital habeas

24  petitioner asserting a freestanding innocence claim must go beyond
    demonstrating doubt about his guilt, and must affirmatively prove that he is

25  probably innocent. See id. But Carriger is of no consequence here because
    petitioner was not sentenced to death nor makes any showing whatsoever that he

26  is actually innocent.

27

1    Petitioner is not entitled to federal habeas relief on his claim of improper

2    admission of other crimes evidence.  It simply cannot be said that the state courts

3    unreasonably applied clearly established Supreme Court precedent in rejecting

4    the claim.  See Larson v. Palmateer, 515 F.3d 1057, 1066 (9th Cir. 2008)

5    (because Supreme Court expressly reserved question of whether using evidence

6    of prior crimes to show propensity for criminal activity could  violate due

7    process, state court's rejection of claim did not unreasonably apply clearly

8    established federal law as required by 28 U.S.C. § 2254(d)).

9    C.    Denial of a Fair Trial

10    Petitioner claims that he was denied a fair trial because he was not "put . . .

11    on the same level as the District Attorney."  FAP at 9.  Although there is no

12    clearly established constitutional right to be put on the same level as the

13    prosecutor, several specific claims raised in conjunction with his denial of a fair

14    trial claim must be addressed.

15         1.    Use of false testimony

16    Petitioner claims the prosecutor "knowingly used perjured

17    testimony, or failed to correct known false testimony to obtain [his] conviction."

18    FAP at 9.  The claim is without merit.

19    A conviction obtained through the use of testimony which the prosecutor

20    knows or should know is perjured must be set aside if there is any reasonable

21    likelihood that the testimony could have affected the judgment of the jury.

22    United States v. Agurs, 427 U.S. 97, 103 (1976).  The same result obtains when

23    the prosecutor, although not soliciting false evidence, allows it to go uncorrected

24    when it appears.  Napue v. Illinois, 360 U.S. 264, 269 (1959).

25    To prevail on a claim based on Agurs/Napue, the petitioner must show

26    that (1) the testimony (or evidence) was actually false, (2) the prosecution knew

27

28                                             28

or should have known that the testimony was actually false, and (3) that the false

testimony was material. United States v. Zuno-Arce, 339 F.3d 886, 889 (9th Cir.

2003) (citing Napue, 360 U.S. at 269-71). "Material" means that there is a

reasonable likelihood that the false testimony or evidence could have affected the

judgment of the jury. Morris v. Ylst, 447 F.3d 735, 743 (9th Cir. 2006).

Petitioner's false testimony claim fails because he sets forth no proof

whatsoever that any testimony was actually false, much less that the prosecutor

knew or should have known that it was actually false. See Murtishaw v.

Woodford, 255 F.3d 926, 959 (9th Cir. 2001) (rejecting false testimony claim

where, even if testimony could be assumed to be false, petitioner presented no

evidence that prosecution knew testimony was false); see also Morales v.

Woodford, 388 F.3d 1159, 1179 (9th Cir. 2004) (petitioner must establish factual

basis for attributing knowledge that testimony was perjured to the prosecutor).

Petitioner is not entitled to federal habeas relief on his false testimony

claim. The state courts' summary rejection of the claim cannot be said to have

been objectively unreasonable. See Plascencia, 467 F.3d at 1197-98 (applying 28

U.S.C. § 2254(d)).

### 2.    Lightening the burden of proof

Petitioner claims that the court "gave instructions that lightened the

prosecutor's burden of proof." FAP at 9. The claim is without merit.

The Due Process Clause "protects the accused against conviction except

upon proof beyond a reasonable doubt of every fact necessary to constitute the

crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). The

record shows that the jury was properly instructed that it had to find petitioner

guilty "beyond a reasonable doubt" and that it had to give him the benefit of any

doubt. Clerk's Tr. at 269-70 (CALJIC Nos. 2.90 and 2.91). Petitioner points to

no specific instruction that lightened this burden.  He is not entitled to federal habeas relief on his lightening the burden of proof claim.  The state courts' summary rejection of the claim cannot be said to have been objectively unreasonable.  See Plascencia, 467 F.3d at 1197-98 (applying 28 U.S.C. § 2254(d)).

### 3.   Insufficient evidence

Petitioner claims that his conviction "was based on evidence insufficient to establish guilt beyond a reasonable doubt."  FAP at 9.  Not so.

Federal habeas corpus relief is available to a prisoner who claims that the evidence was insufficient to support his state conviction only where, considering the trial record in the light most favorable to the prosecution, "no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 324 (1979).  This standard is applied with reference to the substantive elements of the criminal offense as defined by state law.  Id. at 324 n.16; Sarausad v. Porter, 479 F.3d 671, 678-79 (9th Cir. 2007).

If confronted by a record that supports conflicting inferences, a federal habeas court "must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  Jackson, 443 U.S. at 326.  A jury's credibility determinations are therefore entitled to near-total deference.  Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004).  Except in the most exceptional of circumstances, Jackson does not permit a federal habeas court to revisit credibility determinations.  Id. at 957-58.

After 28 U.S.C. § 2254(d), a federal habeas court applies the standard of Jackson with an additional layer of deference.  Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005).  A federal habeas court must ask whether the operative state

court decision reflected an "unreasonable application of" <u>Jackson</u> to the facts of the case. <u>Id.</u> at 1275.

The record shows that there was ample evidence to persuade a rational trier of fact beyond a reasonable doubt that petitioner was guilty of lewd and lascivious conduct with a child and assault with a deadly weapon. <u>See</u> <u>Jackson</u>, 443 U.S. at 324. The molestation conviction was amply supported by petitioner's initial sexual conduct with Vanessa, M.'s testimony that petitioner touched her chest and tried to get under her shirt, petitioner's statement that he touched M.'s breast because he liked her, and petitioner's prior act of molestation. And the assault conviction was amply supported by evidence showing that petitioner twice pursued Bobby and stabbed him. That the jury accepted Vanessa and M.'s version of the facts, rather than petitioner's attack on their credibility, is of no consequence here. <u>See</u> <u>Bruce</u>, 376 F.3d at 957-58.

Petitioner is not entitled to federal habeas relief on his insufficiency of the evidence claim. The state courts' summary rejection of the claim cannot be said to have been objectively unreasonable. <u>See</u> <u>Plascencia</u>, 467 F.3d at 1197-98 (applying 28 U.S.C. § 2254(d)).

4.      <u>Failure to instruct on defense of property and prior threats</u>

Petitioner renews his claim that the court deprived him of due process because it did not instruct on "defense of property and prior threats." FAP at 9. For the reasons noted in rejecting petitioner's earlier version of the claim, the claim is without merit. <u>See</u> <u>supra</u> at 21-22.

5.      <u>Denial of right to present a defense</u>

Petitioner claims that he was denied his right to present a defense due to counsel's failure to call four named witnesses and to show that petitioner "did not 'knowingly and willingly' commit any such charge against him because

31

of his intoxication." FAP at 9.  He provides no indication of what any of the proffered witnesses would have testified to, however.  The claim amounts to no more than a rehash of several of the ineffective assistance of counsel claims discussed earlier and, for the same reasons noted in rejecting those claims, the claim is without merit.  See supra at 11-12, 14-15, 16-17.

### 6.    Conviction on less than proof beyond a reasonable doubt

Petitioner claims that he was convicted "on less than proof beyond a reasonable doubt of every element of the charged crimes." FAP at 9.  The claim is without merit.

The court previously found that the jury was properly instructed that it had to find petitioner guilty beyond a reasonable doubt, as required by In re Winship, and that there was ample evidence to support the convictions, as required by Jackson v. Virgina.  See supra at 29-31.  The state courts' summary rejection of the petitioner's rehash of his prior burden of proof claims cannot be said to have been objectively unreasonable.  See Plascencia, 467 F.3d at 1197-98 (applying 28 U.S.C. § 2254(d)).

### 7.    Defective jury instructions and actual innocence

Petitioner claims that his conviction resulted from "jury instructions that were fundamentally defective or not brought to the attention of the jury, such that petitioner is actually innocent of the charges on which he was convicted." FAP at 9.  The claim is without merit.  Petitioner does not specify instructional error and, to the extent he may be relying on previously-specified instructional errors, the claim fails for the same reasons the prior claims did.  See supra at 21-22, 29-30, 31.  The same hold true for his rehash of his previously-raised claim of actual innocence.  See id. at 26-27.  The state courts' summary rejection of the claim was not objectively unreasonable.  See 28 U.S.C. § 2254(d).

**CONCLUSION**

After a careful review of the record and pertinent law, the court is satisfied that the petition for a writ of habeas corpus must be DENIED.

The clerk shall enter judgment in favor of respondent and close the file.

SO ORDERED.

DATED:  April 27, 2009

CHARLES R. BREYER
United States District Judge